**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HEATHER BLUNDELL,

    Plaintiff,

                                   Case No.:

vs.                                  Hon.

CASSANDRA L. MORSE-BILLS,
RICHARD E. VOLLBACH, JR., and
TOM PRATT, in their individual capacities,

    Defendants.

_____

PAUL W. BROSCHAY
Paul W. Broschay (P36267)
*Attorney for Plaintiff*
340 Kinmore Crt.
Dearborn Hts., MI 48125
(248) 248-224-7507

_____

## <u>COMPLAINT AND JURY DEMAND</u>

    NOW COMES PLAINTIFF, HEATHER BLUNDELL, by and through her counsel, Paul W. Broschay and for her complaint and jury demand states as follows:

## PARTIES

1.   Plaintiff HEATHER BLUNDELL is a citizen of the State of Michigan and currently resides in the COUNTY OF OSCODA Michigan.

2.   Defendant CASSANDRA MORSE-BILLS is a citizen of Michigan and is sued in her individual capacity.

3.   Defendant RICHARD VOLLBACH JR., is a citizen of Michigan and is sued in his individual capacity.

4.   Defendant TOM PRATT is a citizen of Michigan and is sued in his individual capacity.

5.   At all times relevant to this lawsuit, each and all of the Defendants were acting under color of law with respect to the events set forth in the Complaint.

6.   Defendants are jointly and severally liable to Plaintiff for the claims asserted herein.

## JURISDICTION AND VENUE

7.   The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, § 1343(a)(1)-(4), 1343(b), and § 1367.

8.   Venue is proper under 28 U.S.C. § 1391(b).

## COMMON ALLEGATIONS

2

9.  Plaintiff Heather Blundell was employed as a district court clerk for Oscoda County since approximately August of 2023.  Blundell's duties at the district court included processing new filings, assisting the public and handling all courtroom recordings for district court matters. Recording duties entailed running the JAVS system in the courtroom to accurately begin and end all goings on while court is in session. As a court employee, Plaintiff was provided access to watch a live stream of current court proceedings on a computer monitor at her workstation.

10.  At all times relevant to this Complaint, Plaintiff reported to both Defendant Pratt, the court administrator, as well as Defendant Morse-Bills, a judge serving both the Oscoda district and circuit courts. Defendant Vollbach Jr. served as Chief Judge over the Oscoda district and circuit courts.

11.  During the week of April 28, 2025, Plaintiff was present and observed at the Oscoda courthouse the criminal trial of *People v Robert A. Declercq*, Case No. 2023-1884-FC (Oscoda County Circuit Court).

12.  On a day of Mr. Declercq's trial in which two jurors were dismissed, Plaintiff was present in the courtroom to record an unrelated proceeding that took place during a break in the trial. Defendant Judge Morse-Bills was the presiding judge for the Declercq trial and also handled the unrelated district

court matters that Plaintiff was tasked with recording.

13.   After the district court matter concluded, Plaintiff followed Defendant Morse-Bills through her chambers towards the exit ass usual. As they walked and began having a casual conversation during which Defendant Morse-Bills abruptly stopped in front of Plaintiff and laughed while she looked at her cell phone.

14.   Plaintiff asked Defendant Morse-Bills why she was laughing and Judge Morse-Bills motioned to the cell phone in her hand and said that one of the two alternate jurors who had been dismissed from the jury was texting her his feelings about being let go from the jury.

15.   Defendant Morse-Bills proceeded to explain to Plaintiff that the juror who was texting her is someone everyone in town refers to as "Hoff" (Richard Hoffman) and that he has always wanted to sit on a jury and had finally been chosen for this "big case."

16.   Defendant Morse-Bills then stated to Plaintiff that this dismissed juror was texting her regarding his resentment for sitting through the entire trial only to be let go at the very end; Defendant Morse-Bills appeared amused that this juror was texting her prior to the trial concluding while Plaintiff found it very odd that Defendant Morse-Bills was engaged in *ex-parte*

4

communication with a trial juror, even an alternate juror who had been dismissed from the jury.

17. At the conclusion of the trial, Mr. Declercq was found guilty.

18. Within a few days following conversations with co-workers in which Plaintiff disclosed her observations and concerns of the conduct of Judge Morse-Bills, the video feed of the Courtroom provided to Plaintiff's workstation was disconnected at the direction of one or more Defendant in retaliation for Plaintiff disclosing her concerns.

19. Upon further reflection in the months following the Declercq trial, Plaintiff felt compelled to come forward and report Defendant Morse-Bills actions regarding her texts with the dismissed juror suspecting the Defendant Judge and juror had some sort of personal relationship with each other.

20. On or about early December 2025, Plaintiff contacted counsel for Mr. Declercq to disclose Plaintiff's conversation with Defendant Morse-Bills regarding her texting a juror.

21. Plaintiff then executed a sworn declaration (and later an affidavit) recounting the exchange that took place between her and Defendant Morse-Bills during the Declercq trial.

22. Counsel for Mr. Declercq then submitted to the Oscoda Circuit Court an

5

Emergency Motion to recuse Judge Morse-Bills from hearing post trial Motions based on the alleged ex parte communications between Defendant Morse-Bills and a juror.  Plaintiff's declaration was attached to the emergency motion to recuse.

23. On February 17, 2026, Plaintiff appeared and testified before Defendant Chief Judge Vollbach Jr., during a *de novo* hearing on Mr. Declercq's Motion to Recuse Defendant Morse-Bills after she denied the Motion in her Court.

24. During said hearing, Plaintiff testified as to contents of her declaration/affidavit regarding her conversation with Defendant Morse-Bills about her texting with the dismissed juror from the Declercq trial.

25. Following her testimony in court, Plaintiff returned to work on February 23, 2026, at which time Defendant Vollbach Jr. and a court administrator advised Plaintiff that they opened an investigation into Plaintiff's actions and placed her on administrative leave until further notice.

26. On March 4, 2026, Plaintiff received a "Final Notice of Terminiation" that her employment with Oscoda County 81st District/23rd Circuit Court was terminiated effectively immediately.

27. The stated pretextual reasons for Plaintiff's termination were, among others,

that Plaintiff "contacted only one of the attorneys in a pending criminal case with the court, and had ex parte communications, specifically intending to place a circuit court jury trial verdict in question and attacked the integrity of the judge, the court, an excused juror, and the jury verdict."

28. Plaintiff's notice of terminiation is signed by Defendants Morse-Bills, Vollbach, and Pratt.

## COUNT I; VIOLATION OF THE FIRST AMENDMENT

29. Plaintiff hereby incorporates by reference herein the allegations contained in the above Paragraphs of the complaint.

30. Under the First Amendment to the United States Constitution, Plaintiff has a constitutional right to engage in protected conduct without retaliation.

31. Plaintiff engaged in protected conduct by disclosing to counsel, and later the court, Defendant Morse-Bills's actions that Plaintiff believes were improper, unlawful, and/or unethical.

32. In retaliation for Plaintiff's protected conduct, Defendants terminated Plaintiff's employment with the Oscoda district/circuit court in violation of Plaintiff's First Amendment right to be free from retaliation.

33. Plaintiff suffered an adverse action in that her employment with the court was terminated based on her disclosure of Defendant Morse-Bills's

suspected improper conduct as a judicial officer.

34. The adverse action taken against Plaintiff is of the kind that would deter a person of ordinary firmness from continuing to engage in such protected conduct.

35. As a direct and proximate result of Defendants' wrongdoing and violation of Plaintiff's constitutional rights, Plaintiff has sustained loss of earings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportuntities, damage to her good name and reputation, mental and emotional distress, humilitation and embarrassment, and the loss to pursue employment of choice.

36. The constitutional rights that Defendants violated were clearly established at all times when Defendants violated such rights and a reasonable person in Defendants' position would have understood that their conduct was in violation of those rights.

37. Defendants are therefore not entitled to qualified immunity.

38. By virtue of Defendants' actions, Plaintiff is entitled to compensatory and punitive damages.

### COUNT II; VIOLATION OF MICHIGAN WHISTLEBLOWERS PROTECTION ACT

39. Plaintiff hereby incorporates by reference herein the allegations contained in

the above Paragraphs of the complaint.

40. Michigan's Whistleblower Protection Act ("MWPA), Mich. Comp. Laws § 15.362, prohibits an employer from discharging an employee because the employee or a person acting on behalf of the employee reports a violation or a suspected violation of a law, regulation, or rule.

41. Plaintiff engaged in protected activity within the meaning of MWPA by reporting to both counsel and the court her suspicions that Defendant Morse-Bills was in violation of State and Federal laws by secretly texting a juror during a criminal trial.

42. Defendants knew of Plaintiff's protected activity and terminated her in retaliation for such protected activity.

43. As a direct and proximate result of Defendants' wrongdoing and violation of Plaintiff's rights under MWPA, Plaintiff has sustained loss of earings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunties, damage to her good name and reputation, mental and emotional distress, humiliation and embarrassment, and the loss to pursue employment of choice.

## DAMAGES AND RELIEF REQUESTED

44. Plaintiff hereby incorporates by reference herein the allegations contained in

9

the above Paragraphs of the complaint.

45.    Plaintiff is entitled to any and all damages or losses compensable under federal and state law including, but not limited to, those damages authorized under 42 U.S.C. §§ 1983, 1988, and/or Michigan law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court, by and through its trier of fact enter Judgment in favor of Plaintiff and against Defendants, together with interest, costs and attorney fees or as otherwise determined by the court or trier of fact.

Respectfully submitted,

Dated: April 27, 2026                           /s/ Paul W. Broschay (P36267)
                                                Paul W. Broschay
                                                *Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

By and through her counsel, Plaintiff Heather Blundell hereby demands a trial by jury in the above captioned matter.

10

11